INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 00-00531

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 02-3892

**FILED**

MAR - 1 2004

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**LEONARD GREEN, Clerk**

| | |
|---|---|
| RAUL M. ESPITIA, ) | |
| ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellant,** ) | UNITED STATES DISTRICT |
| ) | COURT FOR THE |
| v. ) | SOUTHERN DISTRICT OF |
| ) | OHIO |
| THE PROCTER & GAMBLE COMPANY; THE ) | |
| EMPLOYEE REPRESENTATION ASSOCIATION, ) | **OPINION** |
| ) | |
| **Defendants-Appellees.** ) | |

**BEFORE:** NORRIS, GILMAN, and ROGERS, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Plaintiff Raul M. Espitia appeals from the grant of summary judgment in favor of defendants The Procter & Gamble Company ("P&G") and the Employee Representation Association. Espitia argues that the district court erred in finding that he failed to raise any genuine issue of material fact regarding his race and national origin discrimination claims under Title VII of the Civil Rights Act of 1964, Ohio Rev. Code § 4112, and Ohio public policy. We affirm.

I.

Espitia, a Hispanic Mexican national and a long-time P&G employee working at its Ivorydale production facility in Cincinnati, was assigned to work for twelve hours on Monday, Thursday, and Friday during the week of July 4, 1999. His shift lasted from 6:30 a.m. to 7:00 p.m. each day. He arrived on time on Thursday, July 8, but left from 8:00 to 11:00 a.m. on personal business, asking

*No. 02-3892*
*Espitia v. The Procter & Gamble Co.*

his co-workers to cover for him. That morning, Department Leader Pat Tewksbury learned of Espitia's absence and proceeded to check his time sheet, which Espitia was responsible for maintaining and which served as the basis for his pay. Tewksbury testified at deposition that when he examined it that morning, the time sheet indicated Espitia's arrival time to be "6:30 a.m.," and that there was no entry indicating Espitia's departure time or his total hours worked. A co-worker of Espitia, Jeff Drago, testified at deposition that he also saw the time sheet, which listed "7:00 p.m." as Espitia's leaving time and "12" for hours worked. However, Drago did not remember when he looked at the time sheet.

The following day Tewksbury again reviewed Espitia's time sheet for July 8. This time the time sheet indicated that Espitia had worked until "7:00 p.m." and had worked for "12" hours. Espitia was called to a meeting with Tewksbury and others that day. There, Espitia explained that he had filled in the "6:30 a.m." and the "7:00 p.m." at the beginning of the week, an explanation that contradicted Tewksbury's observation. He further explained that he had not written the "12" on his time sheet because the "2" did not have a loop, which Espitia's 2's always had. Espitia suggested that Tonya King, the payroll clerk, could have filled in the "12." Alternatively, it was not uncommon for employees to enter their data mistakenly on other employees' sheets, because of their central location.

Tewksbury and other managers at the facility, including Beauty Care Plant Manager Mary O'Rourke, who was responsible for terminations, investigated the incident, and Espitia was suspended without pay during the investigation. Tonya King was asked whether she wrote the "12" on Espitia's time sheet, and she denied it. In addition, Espitia's previous time sheets were examined

No. 02-3892
*Espitia v. The Procter & Gamble Co.*

and revealed more 2's without loops, although the time sheet for the week of July 4 bore no other un-looped 2's. O'Rourke asked Tewksbury for a recommendation and Tewksbury recommended that Espitia be terminated on the basis that he was intentionally falsifying his time sheets. Espitia was terminated and was ultimately replaced by Michael Manley, a white United States citizen.

Espitia obtained union representation and filed a grievance with P&G. Espitia pressed his grievance through the entire four-step grievance process without obtaining relief, after which the union decided not to seek arbitration for his claim.

P&G had a strong policy against submitting false time sheets. The employee handbook, which Espitia had received, warned employees never to falsify time records. In addition, this warning was placed conspicuously throughout the P&G facility:

> If it is ever intended to defraud or mislead the company, for example, by falsifying payroll records, buying requisition, or any other company document, disciplinary action may include termination, even though it may be a first offense.

In October 1998, an arbitrator had reinstated two employees after they had been terminated pursuant to P&G's policy on the ground that it had not been strictly enforced. In response, P&G re-promulgated a revised policy in early 1999, which stated that all employees who intentionally falsified records were subject to termination.

Prior to Espitia's termination, other P&G employees had submitted false time sheets but had not been terminated. In 1992, Timothy Blanton and Richard Balzarini, both white United States citizens, received ten-day layoffs for leaving their positions during working hours and not reporting their absences on their time sheets. Later, employees Earl Bauman, a white United States citizen, and Kevin Collier, a black United States citizen, who were subject to Tewksbury's supervision, were

*No. 02-3892*
*Espitia v. The Procter & Gamble Co.*

not terminated for unreported late arrivals. P&G points out that several non-Hispanic United States citizens have been terminated pursuant to its policy.

Espitia brought suit in district court against P&G, alleging racel and national origin discrimination. The district court granted defendants' motions for summary judgment because, although Espitia had stated a prima facie case of discrimination, he had not produced sufficient evidence that P&G's reason for termination served as a pretext for discrimination. Espitia appealed.

## II.

*1.    Title VII and Ohio Rev. Code § 4112 Claims*

Discrimination claims brought under Title VII and Ohio Rev. Code § 4112 are subject to the same analysis. *Plumbers and Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 421 N.E.2d 128, 131 (1981). Where, as in this case, a plaintiff presents a prima facie case of discrimination, and the defendant presents a non-discriminatory reason for the adverse employment action, the plaintiff must demonstrate that the defendant's reason was a pretext for discrimination. The plaintiff must show either "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate the discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Espitia does not argue that P&G's reason had no basis in fact. He argues instead that P&G's reason did not actually motivate his discharge, and that the reason was insufficient to motivate his discharge.

*No. 02-3892*
*Espitia v. The Procter & Gamble Co.*

    a.    *Actual Motivation for Discharge*

To demonstrate that an employer's proffered reason did not actually motivate an employee's discharge under the law of this circuit, the employee must "put forth evidence that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citations omitted). To do so, this court examines "whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id.* That determination is made using the following analysis:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.* (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)). Espitia argues that this standard misstates the law following the Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), which held that "[a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. However, this court took the *Reeves* decision into account when announcing the standard in *Braithwaite*. *Braithwaite*, 258 F.3d at 493, n.2. The standard enunciated in *Braithwaite* is therefore the law of this circuit.

Under that standard, it is clear that P&G relied upon the results of a reasonable investigation to discharge Espitia. It investigated whether Tonya King had filled in the "12" as Espitia suggested, and examined Espitia's earlier time sheets to see if he ever wrote his 2's without loops. On finding

-5-

*No. 02-3892*
*Espitia v. The Procter & Gamble Co.*

that King did not fill in the "12" and that earlier time sheets contained 2's without loops, P&G management concluded that Espitia had intentionally falsified his time sheet. This conclusion was buttressed by the fact that Espitia's explanation that he had filled in the "7:00 p.m." departure time at the beginning of the week seemed like a cover-up because it contradicted Tewksbury's observation of the sheet on the day of Espitia's absence. These facts indicate that P&G management honestly believed that Espitia had intentionally falsified his time sheet, and that the falsification was the reason for his termination.

The evidence Espitia presents in response is insufficient to infer that P&G's management did not honestly believe that he had falsified records. The fact that all the other 2's on the time sheet for the week of July 4 were looped is irrelevant because a broader sampling of Espitia's time sheets showed several un-looped 2's. The fact that P&G failed to investigate whether employees other than Tonya King filled in the "12" is irrelevant as well; P&G was not required to investigate every possible avenue of inquiry. P&G's reasonable investigation, which looked into both of Espitia's explanations, was sufficient. Finally, the testimony of Jeff Drago does not rebut Tewksbury's testimony that he did not observe a "7:00 p.m." departure time entered on the time sheet when he first looked at it on the morning of Espitia's absence because Drago did not remember when he saw the time sheet. Espitia's evidence is too weak to raise a genuine issue of material fact regarding P&G's honest belief in the justification for his termination.

 b. *Sufficient Reason for Discharge*

For Espitia to demonstrate that P&G's reason for termination was insufficient to justify a discharge, he must "demonstrate[] that a comparable non-protected person was treated better."

*No. 02-3892*
*Espitia v. The Procter & Gamble Co.*

*Ercebegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (quotation marks and citation omitted). The "comparable non-protected person" must be similarly situated in all relevant respects. *Id.* at 352. Espitia has identified no such employee. The two employees who were not terminated when they falsified their time sheets in 1992 were not similarly situated because they were lightly disciplined prior to P&G's decision to strictly enforce its termination policy in early 1999. The two other employees who were not terminated for not reporting their tardy arrivals were not similarly situated because coming to work late is quite different from leaving work for several hours in the middle of the day. Not reporting tardiness indicates carelessness, while not reporting a three-hour mid-day absence indicates something worse. The district court did not err in finding that Espitia's evidence was insufficient to prevent the grant of summary judgment in favor of P&G.

2.   *Ohio Public Policy Tort*

Espitia argues that the district court erred in granting summary judgment in favor of P&G on his state public policy tort claim. However, Espitia admits in his brief that the "final two elements" of an Ohio public policy tort claim "are essentially the same as the race and national origin discrimination claims under Title VII and [Ohio Rev. Code] § 4112." Therefore, because the Title VII and Ohio Rev. Code § 4112 claims fail, the Ohio public policy tort claim fails as well.

### III.

Accordingly, the judgment of the district court is **AFFIRMED** for the reasons stated above, and in the thorough discussion by the district court in its Order, filed July 12, 2002.